STRANGE and Another *v.* DONOHUE.

To render a witness incompetent on the ground of interest, he must be interested in the event of the suit.

When it becomes material to ascertain with what motive an act was done, the declarations made by the party himself while doing the act, and explanatory of it, are admitted as being part of the transaction, and as serving to explain its real character.

*A.* obtained judgment against *B.* before a justice of the peace, and filed transcripts in the clerk's office and had them recorded, to bind *B.'s* land. Before he had procured an order for an execution, *B.'s* land was advertised for sale on an execution issued upon an older judgment. To prevent the sale, in order to procure an assignment of such older judgment, *A.* was advised by his attorney, who was also the attorney of the execution-plaintiff, to put in the sheriff's hands a sum sufficient to satisfy the execution, whereupon he, the attorney, would order a postponement of the sale to allow *A.* time to procure the assignment. *B.* accordingly paid that sum to the sheriff, he and the attorney stating to the sheriff that the money was not paid in satisfaction of the judgment, but merely to prevent a sale of the land in order to give *A.* the control of the execution and judgment. *Held,* that the handing of the money to the sheriff did not operate to satisfy the judgment.

APPEAL from the *Hendricks* Circuit Court.

ROACHE, J.—Motion to enter satisfaction of a judgment.

The petition filed as the foundation of the motion, alleged that one *Donohue* had obtained a judgment against *Strange* and *Ellis,* in the *Hendricks* Circuit Court, in 1848, for 176 dollars and 86 cents; that execution was issued, and, with another against the same defendants, was levied on eighty acres of land belonging to *Strange,* which was advertised to be sold on the 28th day of *February,* 1852. The petition further alleged that on the day of sale, but before the sale actually took place, one *Andrew Clifton,* as the agent of *Strange* and *Ellis,* paid to the sheriff the full amount of the judgment, interest, and costs, in full satisfaction thereof; that the sheriff, for the purpose of defrauding *Strange* and *Ellis,* refused to return the execution satisfied, and that *Donohue* refused to receipt upon the judgment for the money received as above men-

tioned, but still suffered the same to remain of record unsatisfied.

The defendant filed a plea denying, in general terms, that the judgment had been paid or satisfied, as alleged.

The facts disclosed by the testimony produced on the hearing, are as follows:

Sometime before the day set for the sale of the eighty acre tract levied upon by the sheriff, the same *Andrew Clifton*, who in the petition is alleged to have paid off the *Donohue* judgment, obtained three judgments against *Strange*, before a justice of the peace, amounting together to over 300 dollars, had taken transcripts and had them recorded in the clerk's office to bind *Strange's* real estate. *Strange* had no propety subject to execution except the eighty acre tract levied on. *Clifton* employed *Harvey* and *Gregg*, who were also the attorneys of *Donohue*, to collect these three judgments off *Strange*. They advised him to place in the sheriff's hands the money due on the execution; that then they, as the attorneys of *Donohue*, would order a postponement of the sale until judgments could be procured on the justice's transcripts, and also procure an assignment to him of *Donohue's* judgment. In pursuance of this advice, on the day of sale, but before the property was offered, *Clifton* handed the money to *Harvey*, and he and *Clifton* went together to the sheriff, explained their purpose to him, and distinctly told him that the money " was not paid in satisfaction of the judgment, but merely to prevent a sale of the land, and to get *Clifton* the control of the execution and judgment.

The money was, thereupon, counted out and paid to the sheriff, the sale was postponed, and *Harvey* immediately wrote to his client, *Donohue*, explaining the whole transaction, and informing him that upon his transferring the judgment to *Clifton*, they were authorized to remit the money. By due course of mail, they received a transfer of the judgment to *Clifton:* they also received the money from the sheriff and remitted to *Donohue*.

The sheriff testified that when *Harvey* came to pay him

the money on the day of sale, both *Harvey* and *Clifton* told him that it was handed him, not in satisfaction of the judgment, but to justify him, the sheriff, in postponing the sale until the judgment could be transferred to *Clifton*.

Upon the hearing the Court overruled the motion to enter satisfaction.

The appellants complain of the admission of *Harvey* as a witness, on the ground of interest. *Harvey* testified that he had a conditional fee from *Clifton* in the collection of his judgments; but stated that it was in no wise contingent upon the event of this suit. Nothing further appears on the subject. This formed no ground of objection to him as a witness.

It is also objected to the testimony of the sheriff, that he was permitted to detail " the statements of others." The only statements of others testified to by the sheriff, were the statements made to him by *Harvey* and *Clifton*, accompanying the delivery of the money to him, and explaining the purpose of its payment.

It frequently becomes material, as in the present case, to ascertain with what motive an act was done. In such cases, the declarations made by the party himself, while doing the act, and explanatory of it, are admitted as being a part of the transaction, and as serving to explain its real character. For this purpose they are admissible as being a part of the *res gestae*, and may be proved by the same testimony adduced of the fact itself. In this view, the admission of the testimony of the sheriff was correct. See *Haynes* v. *Rutter*, 24 Pick. 242.—*Kilburn* v. *Bennett*, 3 Met. 199.

We think the Circuit Court was right in overruling the motion to enter satisfaction. The design of *Clifton* in the transaction is obvious. He was desirous of protecting the property out of which was his only hope of making his own junior judgments, from being sacrificed. He was advised by his counsel that the proper course to effect that object was, to purchase and thus control the *Donohue* judgment; that in order to do this, it was necessary to deposit the amount of that judgment in the hands of the

Nov. Term, 1853.

STRANGE
v.
DONOHUE.

sheriff, so as to procure a postponement of the sale which was then impending, until the transfer of the judgment could be made. It was certainly legitimate for him to protect himself by buying in a senior judgment. His doing so certainly can be no cause of complaint to the judgment-debtor, *Strange*. *Clifton's* acts cannot possibly place him in any worse position than he would otherwise have been.

It is strenuously insisted that the handing the money to the sheriff operated as a satisfaction. Unexplained it would unquestionably : even if the manner and purpose of the payment were left in doubt by the testimony, it might be a question whether it should not be treated as a satisfaction.

It is true, we do not see any clear reason given why he was advised to place the money in the hands of the sheriff; but it is equally clear, from all the testimony, for what purpose it was placed there. That purpose was legitimate. It could not possibly do injustice to any one.

No fraud is charged on *Clifton*. The evidence shows that he designed, in good faith, to buy the *Donohue* judgment, and that he pursued the course he was advised was proper and necessary. It would be a gross perversion of justice to apply the money he paid for the purpose of purchasing, in satisfaction of the judgment. (1)

*Per Curiam.*—The judgment is affirmed with costs.

*C. C. Nave*, for the plaintiffs.

*J. S. Harvey* and *J. M. Gregg*, for the defendant.

(1) DAVISON, J., was absent.