INDIANA STEEL PRODUCTS COMPANY *v.* LEONARD, ADMINISTRATRIX, ETC., ET AL.

[No. 18,758. Filed January 10, 1956. Rehearing denied February 2, 1956. Transfer denied July 27, 1956.]

670

*Oscar C. Strom, Charles K. Whitted,* of Gary, for appellant.

*Ryan, Chester & Clifford,* of Valparaiso, for appellees.

PFAFF, P. J.—This is an appeal from an award of the Full Industrial Board of Indiana, under the Workmen's Compensation Act.

The application for compensation was originally filed August 7, 1951, by the appellee, Mary Jane Leonard, Administratrix of the estate of Robert C. Leonard, deceased, and in which application she recites that she was divorced from the decedent on the 27th day of October, 1950, but that said decedent left surviving him as sole dependents Robert C. Leonard, age four years, and Patrick T. Leonard, age two years.

Compensation was awarded to the minor children and we quote from the award:

"BE IT REMEMBERED that pursuant to notice fixing the time and place therefor, this cause was

called for hearing and review before the Full Industrial Board of Indiana, at their offices in the Indiana State Office Building, 141 S. Meridian Street, Indianapolis, Marion County, Indiana, July 7, 1955, at 9 A.M., on order of the Industrial Board of June 10, 1955, remanding said cause to a hearing before the Full Industrial Board, which said order is in the following words and figures, towit: (H. I.)

"Plaintiffs were represented by their attorneys, Edward J. Ryan and Charles T. Clifford. The defendant appeared by its attorney, Oscar C. Storm.

BE IT FURTHER REMEMBERED that on the 18th day of September, 1953, the Industrial Board of Indiana rendered an award in said cause, which said award is in the following words and figures, towit: (H. I.)

"BE IT FURTHER REMEMBERED that on the 16th day of October, 1953, the defendant appealed the said cause to the Appellate Court of Indiana.

"BE IT FURTHER REMEMBERED that on the 18th day of February, 1954, the Appellate Court of Indiana rendered its decision in said cause, in which said decision the said award of the Full Industrial Board of Indiana rendered on the 18th day of September, 1953, was reversed with instructions that the appellee (plaintiff) be given the opportunity to present further evidence in support of her application, if she so desires, which said decision is in the following words and figures, towit: (H. I.)

"BE IT FURTHER REMEMBERED that on the 8th day of July, 1954, in conformity with the decision rendered by the Appellate Court of Indiana, the said cause was remanded to a hearing before a single hearing member of the Industrial Board of Indiana for the purpose of giving the plaintiff an opportunity to present further evidence in support of her application, if she so desires.

"BE IT FURTHER REMEMBERED that pursuant to said order of the Full Industrial Board of Indiana of July 8, 1954, a hearing was had before a single hearing member of the Industrial Board of Indiana on the 6th day of June, 1955; that at the conclusion of said hearing the said cause was re-

manded to the Full Industrial Board of Indiana for further proceedings.

"The Full Industrial Board of Indiana having heard the arguments of counsel and having reviewed all the evidence in said cause, and being duly advised in the premises therein, now finds:

"That on or about the 22nd day of November, 1950, one Robert C. Leonard, plaintiffs' decedent, was in the employ of the defendant at an average weekly wage in excess of $42.00; that on said date said decedent sustained personal injuries by reason of an accident arising out of and in the course of his employment with the defendant, which said accidental injury resulted in his death on the said date; that the defendant had knowledge of his said accidental injury and death, but did not pay for the statutory burial expenses; that at the time of his said accidental injury and death he left surviving him as all and his only dependents the following persons: Robert Collins Leonard, his son, born May 27, 1945, and Patrick Timothy Leonard, his son, born October 29, 1948, both of whom were wholly dependent upon said decedent for their maintenance and support at the time of his said accidental injury and death.

"It is further found that the said minor dependents were not living with the said decedent at the time of his accidental injury and death, at which time the laws of the State of Indiana imposed an obligation on said decedent for the support of the said minor dependents.

"It is further found that the plaintiff, Mary Jane Leonard, and the decedent herein were married on the 11th day of December, 1943, and that they were divorced on or about the 27th day of October, 1950; that said plaintiff was not a dependent of the said decedent within the meaning of the Indiana Workmen's Compensation law.

"It is further found that any and all payments of compensation that may be awarded in the said cause on behalf of the minor dependents herein should be paid to the plaintiff, Mary Jane Leonard, the mother and natural guardian of the said minor dependents, without the appointment of a legal

guardian or trustee; that prior to the filing of plaintiffs' application a good faith effort was made by said parties to adjust said claim, which effort resulted in a disagreement between the parties.

"The Full Industrial Board of Indiana now finds for the plaintiffs, Robert Collins Leonard and Patrick Timothy Leonard, and against the defendant on plaintiffs' application Form 10 for the adjustment of claim for compensation, filed on the 7th day of August, 1951.

### "AWARD

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that there be awarded plaintiffs Robert Collins Leonard and Patrick Timothy Leonard as against the defendant compensation in equal shares, at the rate of $23.10 per week, beginning the 22nd day of November, 1950, for a period not to exceed three hundred and fifty (350) weeks or until terminated in accordance with the provisions of the Indiana Workmen's Compensation law.

"It is further ordered that all deferred payments of compensation shall be brought up to date, paid in cash and in a lump sum.

"It is further ordered that all payments of compensation payable to the minor dependents herein shall be paid to Mary Jane Leonard, their mother and natural guardian, without the appointment of a legal guardian or trustee.

"It is further ordered that the statutory burial expenses in the sum of Three Hundred Dollars ($300) shall be paid by the defendants to the person or persons who incurred the burial expenses for the said decedent, Robert C. Leonard.

"It is further ordered that the defendant shall pay the costs, if any, taxed in said cause.

"Dated this 19th day of July, 1955."

It is from this award of the Full Board that the appellant has appealed, assigning as error that the award is contrary to law.

Under this assignment of error appellant contends,

1. There is not sufficient evidence to sustain the award;

2. The award is based upon incompetent evidence without probative value;

3. This action was brought by the wrong party and an award was given persons who are not parties to this action.

Appellant by his Propositions, Points and Authorities claims that the award is based on incompetent hearsay evidence admitted and considered by the Board over the objection of the appellant and that the award is contrary to law in that the evidence fails to support a reasonable inference that the injury arose out of and in the course of his employment.

The facts show the decedent Robert C. Leonard had been employed by the Indiana Steel Products Company approximately eighteen months prior to November 22, 1950, in the capacity as a sales engineer and salesman, his duties being to sell products manufactured by the Indiana Steel Products Company, with territory extending over the state of Wisconsin, the state of Indiana, the northern half of the city of Chicago and the northern counties in the state of Illinois; that his income was on a commission basis and during the year prior to November 22, 1950, he earned $10,250.00. The record further discloses that the decedent, on the morning of November 22, 1950, was accompanied to the Urschel Airfield, Valparaiso, Indiana, by a fellow employee, where he had his private plane and in which plane he intended to fly to Cudahy, Wisconsin, for the purpose of calling upon his customers.

When last seen the decedent was preparing to take off in his airplane. No word was received from him from the date of take-off, viz: November 22, 1950, until

676

April 2, 1951, when his body was washed ashore in Lake Michigan, at or near the city of South Haven, Michigan.

The alleged hearsay evidence which was admitted and considered by the Board over the objections of appellant and which action is assigned as error consists of statements of a friend and fellow employee of decedent, Ivan Dickey, of a conversation had with decedent prior to his departure from the air field. This testimony was as follows:

Q. "And, did you know on what mission he was going"? A. "He told me he was going to call on customers in the Milwaukee area, specifically at Cudahy, Wisconsin."

In the case of *American Security Company* v. *Minard* (1948), 118 Ind. App. 310, 77 N. E. 2d 762, it is said:

"It seems that our courts in the shadowy borderland of exception to the hearsay rule of evidence have laid out a path which is dim, but nevertheless plain enough that we feel constrained to follow it, which makes such declarations of the existence of a particular intention made contemporaneous with, or immediately preparatory to, a particular litigated act admissible as evidence which tends to illustrate and give character to such act. *Burr* v. *Smith* (1898), 152 Ind. 469, 53 N. E. 469; *Hinchcliffe* v. *Koontz* (1889), 121 Ind. 422, 23 N. E. 271; *Koenig* v. *Bryce* (1932), 94 Ind. App. 689, 180 N. E. 682; *Bakers Consulting Bureau* v. *Julian* (1936), 103 Ind. App. 218, 6 N. E. 2d 737.

"In *Koenig* v. *Bryce,* supra, the court refers to the rule with citations in the following language:

" 'In the case of *Mutual Life Ins. Co.* v. *Hillman* (1892), 145 U. S. 285, 36 L. Ed. 706, the Supreme Court of the United States in discussing evidence of this character said: "A man's state of mind or feeling can only be manifested to others by countenance, attitude or gesture or by sounds or words, spoken or written. The nature of the fact to be proved is the same, and evidence of its proper tokens is equally com-

petent to prove it, whether expressed by aspect or conduct, by voice or pen. When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party.

" 'The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at the time is as direct evidence of the fact as his own testimony that he then had that intention would be. After his death there can hardly be any other way of proving it; and while he is still alive, his own memory of his state of mind at a former time is no more likely to be clear and true than a bystander's recollection of what he then said . . .'' The rule as thus stated is of long standing and is recognized as the law in this state. . . . ' "

The alleged hearsay evidence of Ivan Dickey was a statement of decedent's intentions made contemporaneously with and approximately a few hours prior to the death of the decedent, was in legal import contemporaneous with the act in question, while not in itself of great probative value, we feel, under the rule of our decisions, was competent and material.

Valparaiso, Indiana, and the Urschel flying field are approximately twenty miles from the shores of Lake Michigan. From Valparaiso to Chicago is approximately forty air miles and an equal distance from Valparaiso to South Haven, Michigan. The smallest of air craft travels at an average rate of speed of better than ninety miles per hour or a mile and a half a minute. At the most the decedent would have reached the shores of Lake Michigan in approximately twenty to thirty minutes after take-off.

Our courts have said, "The Court is bound to know that a few hours will take a messenger from Terre Haute to Evansville". *Ward* v. *Colyhan and Wife* (1868), 30 Ind. 395. And in the case of *Indiana Liberty Mutual Insurance Company et al. v. Strate* (1925), 83 Ind. App. 493, 148 N. E. 425. "This court will take judicial notice that the distance from Vincennes to Indianapolis is approximately 130 miles."

The certificate of death issued by the coroner of Van Buren County, Michigan, and being plaintiff's exhibit 4, admitted in evidence, says that Robert L. Leonard met his death by accident (drowning) on or about November 22, 1950.

The defendant made no objection to the introduction into evidence of plaintiff's exhibit 4, with the exception of the insertion as to the time of death. In support of their objections they cite *McCoy et al.* v. *General Glass Corporation* (1939), 106 Ind. App. 116, 17 N. E. 2d 473; *Mishawaka Rubber and Woolen Manufacturing Company* v. *Walker, Gdn. et al.* (1949), 119 Ind. App. 309, 84 N. E. 2d 897; *School City of Hammond* v. *Moriarty,* (1949), 119 Ind. App. 206, 85 N. E. 2d 273.

We do not believe that the above cited cases are applicable to this case. It is true that a coroner's verdict is not admissible in evidence as to *cause of death*. The appellant having waived his objection to plaintiff's exhibit 4 with exceptions, we believe was properly admitted by the Board.

In 99 A. L. R. 207, it is stated:

"A salesman who used a plane for traveling was acting in the course of his employment at the time of his injury on a test flight of his plane preparatory to continuing his trip. *Hammer* v. *General Electric X-Ray Corp.* (1931); Minn. Ind. Com. (1932) U. S. Av. R. 242."

In *Knipe* v. *Skelgas Co.* (1940), 294 N. W. 880, 883, it is stated as follows:

"Air travel today is a commonplace mode of transportation, and the appellee cannot be said to be guilty of a rash act, in furthering the appellant's business in traveling by airplane to call upon prospective customers. Knipe's injury arose out of and in the course of his employment. He was entitled to the benefits of the Workmen's Compensation Act, and the lower court was right in so holding."

The Industrial Board has the power to determine the ultimate facts. In order to arrive at a contrary conclusion we cannot weigh the evidence, neither can we ignore any reasonable inferences which the Industrial Board may have drawn from the facts established by the evidence. *Burton Shields Company* v. *Steele* (1949), 119 Ind. App. 216, 83 N. E. 2d 623.

In a great many cases of death, there is no direct evidence of its cause. However, circumstantial evidence is admissible, and if the circumstances are such that a reasonable inference can be made that there was something connected with the employment which was responsible, then compensation can be given. *Odd Fellows Cemetery of New Haven, Indiana* v. *Daniels* (1941), 109 Ind. App. 127, 33 N. E. 2d 357; *National-Helfrich Potteries Co.* v. *Collar* (1934), 107 Ind. App. 225, 23 N. E. 620, and cases cited.

In addition to the cases where there is a lack of evidence as to causation, the presumption, or its equivalent, is used where evidence is lacking as to whether the workman was killed in the course of his employment. Thus, compensation was allowed for the death of a traveling salesman in an accident on a road on which he could have had no business for his employer. The Board had drawn the inference that the salesman, being new to the territory, had gotten lost while performing the

duties of his employment. *Colgate-Palmolive-Peet Company* v. *Setliff et al.* (1934), 98 Ind. App. 577, 189 N. E. 396. The same result is found in a street accident case where the Board deduced the probability that the salesman was taking care of some unfinished business. *Capital Paper Company* v. *Conner* (1924), 81 Ind. App. 545, 144 N. E. 474.

Unlike death, injuries can usually be traced to their source without much difficulty; then the Board can decide whether that source was within the employment. However, there are some cases where injury is as unexplainable as death. For example, in one case, a salesman fell to the sidewalk and was injured with no evidence as to cause. It may have been due to a falling object, or it may have been caused by some object kicked up by a passing vehicle. The court, in allowing compensation, reasoned that the injury would not have been sustained had it not been for the employment which required the victim to be at the place where he was when he fell. Therefore, sufficient causal connection existed between the employment and the injury. *Burroughs Adding Machine Company* v. *Dehn* (1942), 110 Ind. App. 483, 39 N. E. 2d 499. The same result was reached in another case where an insurance collector suffered a fractured skull and brain lacerations while making his rounds in a dangerous neighborhood. Although he never knew what happened, the court was willing to infer that he had been attacked and that the attack had been occasioned by his employment. *Empire Health & Accident Insurance Company* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664.

Where an employee, charged with the performance of a duty is found injured or dead at a place where his duty may have required him to be, the Appellate Court has held that there is a natural presumption that the

condition was in consequence of his employment. The court has further held that where the circumstances surrounding the death or injury are sufficient to create the presumption, the effect of that presumption is more than a mere guess, conjecture, surmise or possibility. *National-Helfrich Potteries Co.* v. *Collar,* supra.

Section 2 of our Workmen's Compensation Act (Acts 1929, ch. 172, Sec. 2, p. 536; Acts of 1937, ch. 214, Sec. 7, p. 1067; Sec. 40-1202, Burns' 1952 Replacement), provides that "every employer and every employee, except as herein stated, shall be presumed to have accepted the provisions of this act respectively to pay and accept compensation for personal injury or death *by accident arising out of and in the course of the employment and shall* be bound thereby;" (Our italics).

In *Burroughs Adding Machine Company* v. *Dehn, supra,* the court said as follows:

"The word 'accident' used in our Workmen's Compensation Act is used in its popular sense, and means 'any unlooked for mishap or untoward event not expected or designed.' *Haskell, etc. Car Co. v. Brown* (1918), 67 Ind. App. 178, 117 N. E. 555; *Indian Creek Coal Etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709 (with cases cited).

"In the case of *Matter of Heidemann* v. *Am. District Tel. Co.* (1921), 230 N. Y. 305, 308, 130 N. E. 302, 303, Judge Cardozo emphasizes a risk increased by the nature of the employment as a basis of liability. In this particular case a watchman was accidentally shot by a policeman who was pursuing a marauder, and the court held that the death of the watchman was due to a hazard increased by the nature of the employment. In the course of the opinion Judge Cardozo said:

" 'The sudden brawl, the "chance medley" . . . are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the

belated traveller, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek where others were free to shun. The difference is no less real because a difference of degree. The tourist on his first voyage may go down with the ship if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home.'

" . . .

"For Indiana cases where the nature of the hazard or risk was emphasized by this court, see *Burk* v. *Shell Petroleum Corp.* (1933), 97 Ind. App. 603, 187 N. E. 685; *Hunt* v. *Gutzwiller Baking Co.* (1937), 104 Ind. App. 209, 9 N. E. 2d 129; *Short* v. *Kerr* (1937), 104 Ind. App. 118, 9 N. E. 2d 114; *Kiddie Knead Baking Co.* v. *Bolen* (1939), 106 Ind. App. 131, 17 N. E. (2d) 477; *Montgomery* v. *Brown* (1941), 109 Ind. App. 95, 27 N. E. 2d 884.

" . . .

"In the case of *Kiddie Knead Baking Co.* v. *Bolen,* supra, this court quotes with approval the following from *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664:

" 'If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risk incidental to the streets, the accident arises out of as well as in the course of his employment.' "

It is the duty of the Industrial Board, when making an award, to fix the rights of the parties in accordance with the law as it existed at the time of the injury to the workman.

The theory of the compensation law required that the compensation should be paid to the mother and that the dependent child should receive its support through the mother. It was not necessary that the fund should have been apportioned between

the two dependents, or that a guardian or trustee should have been appointed for the child, or that the child should have been made a party to the original proceeding. Under the circumstances of this case the interests of the child were committed to the mother and its rights are determined by the original proceeding. *Riggs* v. *Lehigh Portland Cement Company* (1921), 76 Ind. App. 308, 131 N. E. 231, 120 A. L. R. 395, p. 399.

We feel that there is sufficient evidence to justify the Board in finding that the accidental injury causing appellee-decedent's death arose out of and in the course of his employment.

Award affirmed.

## CONCURRING OPINION

ROYSE, C. J.—I agree with the conclusion of the majority in this case. However, my agreement is based on entirely different reasons than those contained in their opinion.

This is the second appeal of this case. In the first case, *Indiana Steel Products Company* v. *Leonard, Administratrix of the Estate of Robert C. Leonard, Deceased* (1954), 124 Ind. App. 592, 117 N. E. 2d 372, 118 N. E. 2d 374 (Transfer denied) (which I wrote for the Court) this Court reversed the award of the Full Industrial Board of Indiana for the reason the Board had admitted in evidence the deposition of one Ivan Dickey which had not been taken pursuant to law. In the course of that opinion we gave expression to the following dicta:

"In this connection it might be well to say that a majority of this court are of the opinion that if the deposition had been properly admitted it would not have been sufficient to sustain the award".

In a Per Curiam opinion denying transfer of that case, *Indiana Steel Products Company* v. *Leonard, Administratrix of the Estate of Leonard, Deceased* (1954), 233 Ind. 458, 120 N. E. 2d 271, the Supreme Court said in reference to this dicta: "We disapprove this statement." This is a clear unambiguous statement. The word "disapprove" is defined in Webster's New International Dictionary, (Definition 2) as follows: "To pass unfavorable judgment upon; to condemn; to regard as wrong; . . .". Therefore, it seems clear to me that the Supreme Court held that if the Industrial Board heard and believed such evidence it would be sufficient to sustain an award in favor of appellee. In my opinion, that established the law of this case.

In the trial of this case the evidence was the same as that in the first case, except that Ivan Dickey in this case testified orally. It is undisputed that his testimony was substantially the same as that contained in the deposition which was improperly admitted in evidence at the first trial. The Industrial Board on this record has made an award in favor of appellee and, in my opinion, under the ruling of the Supreme Court, *supra,* we are required to affirm the award.

CRUMPACKER, J., CONCURS DUBITANTE.—It is with considerable reluctance that I subscribe to the court's opinion in this case and I do so only because recent decisions of the courts of this jurisdiction and elsewhere, while vigorously asserting that an employer is not an insurer of the safety of his employees, have, to all intents and purposes, made him one by indulging in surmise, speculation and conjecture which, to give them legal substance, are characterized as "reasonable inferences" or "presumptions." It seems to me that many of these decisions were prompted by the courts' social

conscience which apparently regards the injection of common law principles into workmen's compensation cases as unwarranted.

The evidence most favorable to the board's award establishes that on November 22, 1950, Robert C. Leonard was employed by the appellant as a salesman. On the morning of said day he was driven to an airport near Valparaiso, Indiana, where he kept a private plane in which he intended to fly to Cudahy, Wisconsin, for the purpose of calling on certain of the appellant's customers in that area. When last seen he was preparing for the "take-off" and four months and eleven days later, to-wit, April 2, 1951, his dead body was washed ashore in Lake Michigan at or near the city of South Haven, Michigan, which is across said lake from his destination and many miles outside the area of his employment. No trace of his airplane was ever found. A certificate of death, issued by the Michigan Department of Health, Vital Records Section, was introduced in evidence. Upon information furnished by one W. B. Leonard said certificate states that appellees' decedent met his death by accidental drowning in Lake Michigan on November 22, 1950. A medical certificate attached thereto and signed by the coroner of Van Buren County, in which the city of South Haven is situated, states that said drowning was suicidal. However another certificate of death signed by said coroner indicates that accidental drowning was the cause of death.

On this evidence the Industrial Board found that on November 22, 1950, the appellees' decedent "sustained personal injuries by reason of an accident arising out of and in the course of his employment, which said accidental injury resulted in his death" and entered an appropriate award. From Horowitz on Workmen's Compensation, 1944 Edition, p. 133, I quote the follow-

ing: "Unexplained deaths have made Sherlock Holmeses of many judges. The distinction between 'reasonable inferences' (compensable) and speculation, conjecture and surmise (non-compensable) would certainly and often baffle a Watson's credulity." However, "The courts usually abide by the decision of the hearer of the facts, unless they can say that 'taking all the factors into account the board drew an inference that no reasonable man could draw.'" While the reasonableness of the inferences drawn by the board in this particular case, in my opinion, is extremely doubtful I am reluctant to say as a matter of law that no reasonable man could have drawn them.

NOTE.—Reported in 131 N. E. 2d 162.